UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————

MASSIMO MAZZACCONE, individually and on
behalf of all others similarly situated,

                            Plaintiff,          Civil Case No.: 1:24-cv-02681 (JHR)

            v.

CORPORACIÓN ELÉCTRICA NACIONAL S.A,

                            Defendant.

—————————————————————————


**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF PLAINTIFF AS CLASS REPRESENTATIVE,
AND APPOINTMENT OF DUANE MORRIS LLP AS CLASS COUNSEL**


DUANE MORRIS LLP
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, New York 10017-4669
(212) 692-1000
*Counsel for Plaintiff*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

ARGUMENT ....................................................................................................................... 5

    I.      Class Certification Standards ................................................................................ 5

    II.    This Action Meets the Requirements of Fed. R. Civ. P. 23(a) ............................... 6

          A.    Class members are too numerous for joinder. ........................................... 6

          B.    Class members' claims share common issues of fact and law.................... 6

          C.    Plaintiff's claim is typical of the claims of other Class members............... 7

          D.    Plaintiff is an adequate representative
               with experienced class action counsel. ..................................................... 8

    III.   This Action Meets the Requirements of Fed. R. Civ. P. 23(b)(3) ........................ 9

          A.    Common questions of fact and law
               predominate over individual issues............................................................ 9

          B.    A class action is the superior method for adjudicating
               Noteholders' recovery claims fairly and efficiently ................................. 10

               1.    General superiority of the class action......................................... 10

               2.    The pendency of this class action
                      definitively tolls the running of limitation periods. ................... 11

          C.    Any purported issues relating to the Maduro government or to
               "tracing and proving ownership" of the subject bonds do not affect
               certifiability of the proposed class. .......................................................... 13

    IV.   Notice of a Certified Class Will Be Able to Be Efficiently and Reliably
        Disseminated to Class Members Through the DTCC Clearing System ............... 15

CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974)................................................................13

*Bolanos v. Norwegian Cruise Lines Ltd.*,
212 F.R.D. 144 (S.D.N.Y. 2002) .........................................10

*Brecher v. Republic of Argentina*,
806 F.3d 22 (2d Cir. 2015)...........................................2, 6, 8

*Canosa Martinez et al v. PDVSA*,
No. 23-cv-8923 (JMF) ..........................................................5

*Cavara et al. v. PDVSA*,
No. 26-cv-560 (JMF) .............................................................5

*China Agritech v. Michael H. Resh*,
584 U.S. 732 (2018)..............................................................13

*Dornberger v. Metropolitan Life Ins. Co.*,
182 F.R.D. 72 (S.D.N.Y. 1998) .....................................6, 7, 10

*Fogarazzo v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) ...........................................5

*H.W. Urban GmbH v. Republic of Argentina*,
2003 U.S. Dist. LEXIS 23363 (S.D.N.Y. Dec. 30, 2003), *motion granted as to*
*Argentina's liability to holders of the beneficial interests*,
2006 U.S. Dist. LEXIS 9668 (S.D.N.Y. Mar. 9, 2006) .................7, 9, 10

*In re Magnetic Audiotape Antitrust Litig.*,
No. 99 CIV. 1580, 2001 WL 619305 (S.D.N.Y. June 6, 2001)................6

*In re Towers Fin. Corp. Noteholders Litig.*,
177 F.R.D. 167 (S.D.N.Y. 1997) .........................................10

*Krueger v. New York Tel. Co.*,
163 F.R.D. 433 (S.D.N.Y. 1995) ...........................................7

*Marisol A by Forbes v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) .............................................6-7

*Maywalt v. Parker & Parsley Petroleum Co.*,
147 F.R.D. 51 (S.D.N.Y. 1993) ...........................................11

**Page(s)**

*Mazzini v. Republic of Argentina*,
   No. 03 Civ. 8120, 2005 WL 743090 (S.D.N.Y. Mar. 31, 2005) .............................................15

*Olifant Fund, Ltd. v. Republic of Argentina*,
   No. 10 CV 9587 TPG, 2012 WL 1205079 (S.D.N.Y. Apr. 11, 2012)....................................15

*Puricelli v. Argentina*,
   797 F. 3d 213 (2d Cir. 2015)........................................................................................2, 6, 8

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001)....................................................................................................7

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010).......................................................................................... *passim*

**Statutes and Other Authorities**

28 U.S.C. § 1603 ..............................................................................................................................4

Fed. R. Civ. P. 23(a) ........................................................................................................................6

Fed. R. Civ. P. 23(a)(1) ...................................................................................................................6

Fed. R. Civ. P. 23(b)(3).................................................................................................................5, 9

Fed. R. Civ. P. 23(g) ........................................................................................................................9

CPLR § 213(2) .................................................................................................................................2

## INTRODUCTION

Plaintiff Massimo Mazzaccone respectfully submits this Memorandum of Law in support of his motion for class certification. The motion also includes the Declarations of Plaintiff Massimo Mazzaccone; expert on Venezuelan law Hector Fernandez; expert on the DTCC clearing system William W. Wickersham; co-counsel Michael C. Spencer, and proposed Class counsel Anthony J. Costantini from Duane Morris LLP.

This action arises from the failure of Defendant Corporación Eléctrica Nacional S.A. ("Corpoelec") to make contractually mandated repayment of principal and semi-annual payments of interest on one issuance of its senior notes that matured in 2018 (the "Notes"). The Notes were issued by C.A. La Electricidad de Caracas ("EDC") in 2008 as $650,000,000 principal amount of 8.5% Senior Notes under ISIN No. XS0356521160. Corpoelec is liable as the successor by merger to EDC, the issuer of the Notes. Corpoelec failed to repay the principal on its due date of April 10, 2018, and failed to make the required semi-annual interest payments on April 10, 2018, October 10, 2018, and thereafter.

Corpoelec is owned 75% by the Bolivarian Republic of Venezuela (the "Republic") and 25% by Petróleos de Venezuela, S.A. ("PDVSA"), the nation's oil and gas company that is majority-owned by the Republic. Corpoelec's cessation of debt service payments on the Notes occurred within the broader context of the Republic's sovereign debt defaults, including its failure to make required principal and interest payments on the Notes beginning in April 2018.

Mr. Mazzaccone holds $133,000.00 principal amount of the Notes. He filed this action on April 9, 2024, suing on behalf of a proposed Class of all holders of the Notes on that date who continue to hold thereafter. (Complaint, ECF 1). The filing of the proposed class action

tolls the applicable statute of limitations as of April 9, 2024, on claims by all holders of the Notes on that date who continue to hold thereafter.

The Complaint was filed on the eve of the expiration of the New York six-year limitation period on the issuer's failure to repay some $650 million of principal on April 10, 2018. N.Y. CPLR § 213(2).  Had this proposed class action not been filed, that expiration might have led Corpoelec to assert a limitation defense against any claim to recover principal on Notes as well as claims on accruing interest filed after April 10, 2024.[1]  Such a possible limitation defense is a common issue among all members of the proposed Class and presents a compelling reason for certification.  Without Class tolling, each Noteholder would face the risk of a limitation dismissal.

Corpoelec may argue that the August 11, 2023, Tolling Resolution by the National Assembly of Venezuela, the body recognized as the Republic's government by the U.S. Department of State , moots any potential limitations bar.  The Tolling Resolution states that the statute of limitations applicable to actions to enforce the Republic's public debts, including that of Corpoelec, is extended through December 31, 2028.  However, under the Venezuelan public law of "legislative temporality," a resolution by the national legislature does not bind future governments (in the absence of constitutional or treaty constraints, which are not present here), so any future enactment could abrogate a prior tolling resolution.  For that reason, among others, the National Assembly's Tolling Resolution is legally vulnerable. *See* Declaration of Hector Fernandez ("Fernandez Dec.") ¶¶ 31-46.

---

[1] A Noteholder who sold her Notes prior to that date would not have a breach of contract claim for recovery of principal and interest, since standing to bring such a claim "runs with the notes" – *i.e.*, the purchaser would succeed to the claim of her seller as a matter of law, in the absence of agreement to the contrary.  A Noteholder holding on April 9, 2024, who had not sued for recovery, would likely face a statute of limitations defense in any subsequent lawsuit to recover principal on her Notes.  *See Puricelli v. Argentina*, 797 F. 3d 213 (2d Cir. 2015); *Brecher v. Republic of Argentina*, 806 F.3d 22 (2d Cir. 2015).

However, the pendency of the present class action should forestall any limitation defense, and certification of the proposed class would definitively protect Class members from a limitations bar under federal and New York law.

Along with protecting against a limitations bar, this case seeks entry of money judgments in favor of Class members for all issues relating to Corpoelec's breach of its obligations to pay interest and repay principal on the Notes. Those issues pertaining to recovery on the Notes are common to all class members and are relatively routine. The present proposed class action is a fair and efficient way to adjudicate all such claims and defenses.

## **STATEMENT OF FACTS**

EDC originally issued the Notes pursuant to an Indenture, dated April 10, 2008 (the "Indenture"), among EDC, The Bank of New York, as Trustee, Registrar and Principal Paying Agent, and The Bank of New York (Luxembourg) S.A., as Luxembourg Listing Agent and Paying Agent. *See* Declaration of Anthony J. Costantini ("Costantini Dec.") Ex. 2. On or about April 10, 2008, EDC issued $650,000,000 principal amount of 8.5% Senior Notes, under ISIN XS0356521160. As noted above, Corpoelec has succeeded by merger to EDC and is now the obligor on the Notes.

The maturity date for the Notes was April 10, 2018. The Notes and the Indenture required EDC to make interest payments twice a year on April 10 and October 10, until the principal is fully paid or provided for. EDC and its successor Corpoelec failed to make the scheduled interest payment or payment of the principal on April 10, 2018, and have made no interest payment or payment of the principal since that date. (ECF 18 at 4-5).

Corpoelec is a vertically integrated public utility entity responsible for operating the Republic's electricity sector. The Republic established Corpoelec in 2007 as part of the nationalization Decree No. 5,330 issued by then Republic President Hugo Chavez, which

merged approximately 16 utilities, including EDC, under ownership of the state and PDVSA, with Corpoelec then succeeding EDC as obligor on the Notes. Constantini Dec. Ex. 2 (Indenture), § 4.1(b), pp. 26-28; Ex. 5 Offering Circular for Notes, pp. 39-42.

The Republic is a foreign state as defined under 28 U.S.C. § 1603. Corpoelec is also a foreign state or agency under § 1603, as it is majority-owned by the Republic and indirectly owned by the Republic through PDVSA. 28 U.S.C. § 1603(b). Section 9 of the Indenture contains an explicit and unconditional waiver of sovereign immunity. Constantini Dec. Ex. 2 § 9(10)(c).

Massimo Mazzaccone is a citizen of Italy and resides in the city of Fondi. He works as a financial and tax advisor, and he is qualified by the Italian government as a *dottore commercialista*, which permits him to serve as a consultant and fiduciary in Italy. Declaration of Massimo Mazzaccone ("Mazzaccone Dec.") ¶ 4. He has purchased sovereign and quasi-sovereign securities regularly for his investment portfolio for over a decade. Mr. Mazzaccone purchased $133,000.00 face amount of the Notes on the secondary market as investments in several steps prior to October 2017. Mazzaccone Dec. ¶¶ 3-6.[2] Mr. Mazzaccone has also joined four other Duane Morris individual and class lawsuits seeking recoveries from the Republic and PDVSA.

Mr. Mazzaccone volunteered to act as class representative in this case particularly because he wanted to assist in protecting the interests of Noteholders against possible limitation bars. Mazzaccone Dec. ¶ 9. If appointed, Mr. Mazzaccone will be actively engaged in the litigation.

---

[2] Several of the exhibits attached to Plaintiff's declaration have been redacted to remove Plaintiff's confidential financial information, which is irrelevant to his claims.

He also knows that Plaintiff's Counsel has extensive experience with sovereign debt cases. Duane Morris is plaintiffs' counsel in three multi-plaintiff individual (non-class) actions of Venezuela sovereign securities holders, *Arpesella et al. v. Venezuela,* 23 cv 8929 (JAV), *Canosa Martinez et al v. PDVSA*, No. 23-cv-8923 (JMF), and *Cavara et al. v. PDVSA*, No. 26-cv-560 (JMF), all of which Mr. Mazzaccone joined; and in three other proposed class actions involving various other issuances of Venezuela sovereign securities, two of which (*Mazzaccone v. The Bolivarian Republic of Venezuela*, 24 cv 6168 (DLC) and *Mazzaccone v. The Bolivarian Republic of Venezuela*, 24 cv 9114 (LGS)) Mr. Mazzaccone also joined as a proposed class representative.   If appointed, Duane Morris will serve as skilled and industrious Class Counsel in this case.[3]  *See* Costantini Dec.¶¶ 2-3.

## ARGUMENT

### I.    Class Certification Standards

"In order to qualify for class certification under Rule 23(b)(3), class counsel must satisfy four basic requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If these criteria are met, the court must decide whether common questions of law or fact predominate and whether a class action is the superior means of adjudicating the controversy fairly and efficiently."  *Seijas v. Republic of Argentina*, 606 F.3d 53, 57 (2d Cir. 2010) (citing Fed. R. Civ. P. 23(b)(3)).  The "Second Circuit requires a 'liberal' construction of Rule 23."  *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 178 (S.D.N.Y. 2005).

Beginning with *Seijas* in 2010, the Second Circuit Court of Appeals examined a series of class summary judgment and certification orders on holder claims in several Argentina

---

[3] Duane Morris also recently obtained a judgment against the Republic and completed a trial against PDVSA. *See Lovati et al. v. Petroleos de Venezuela, S. A.,* No. 19-cv-04799 (ALC).

sovereign debt class actions, which may be instructive in the present litigation.  In *Seijas*, the Second Circuit upheld the district court's class certification, finding that plaintiffs satisfied Rule 23.  *See Seijas*, 606 F.3 at 59 (upholding class certification but remanding the district court's allowance of class-wide "aggregate" money judgments for inflated amounts).  Other Second Circuit decisions over the next five years held that Argentine sovereign debt breach of contract claims satisfied the Rule 23 requirements for class certification, finding fault only with ascertainable class and aggregate damages issues that do not arise in this case.  *See Puricelli v. Argentina*, 797 F.3d 213 (2d Cir. 2015); *Brecher v. Republic of Argentina*, 806 F.3d 22 (2d Cir. 2015).

## II. This Action Meets the Requirements of Fed. R. Civ. P. 23(a)

### A. Class members are too numerous for joinder.

There is no question of numerosity in this case: $650 million face amount of the Notes was issued into the market, meaning there are likely hundreds, if not thousands, of proposed Class members.[4]  *Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 77 (S.D.N.Y. 1998) (finding that "the threshold for impracticability of joinder seems to be around forty, a requirement which has been easily satisfied here"); *In re Magnetic Audiotape Antitrust Litig.*, No. 99 CIV. 1580, 2001 WL 619305, at *1 (S.D.N.Y. June 6, 2001) (reasoning that "450 entities … is more than enough to satisfy the numerosity requirement").  The proposed Class clearly meets the numerosity requirement under Rule 23(a)(1).

### B. Class members' claims share common issues of fact and law.

The "commonality" requirement for class certification "is met if plaintiffs' grievances share a common question of law or fact." *Marisol A by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d

---

[4] In typical sovereign debt litigation, there are many beneficial owners of the Notes at issue in the litigation.

Cir. 1997) (citing Fed. R. Civ. P. 23(a)(2)). Corpoelec's breach of the terms of the Indenture and Notes, which are applicable to all Noteholders, "create[] a unifying device" in support of commonality. *Dornberger*, 182 F.R.D. at 81. Corpoelec breached its contract "in the same general fashion" with all Class members when it failed to repay principal upon the maturity of the Notes, as well as ongoing interest. *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 439 (S.D.N.Y. 1995). Any debate regarding the scope or efficacy of Corpoelec's sovereign immunity waiver would also be an issue common to all class members. And as discussed above, any statute of limitations defense raised by Corpoelec would be a common issue.

In *Seijas*, Argentina essentially conceded its liability on the bonds at issue but argued that its concession rendered the liability issue moot and irrelevant in assessing commonality for class certification. *Seijas*, 606 F.3d at 57. The Second Circuit Court of Appeals rejected that argument, finding, in accordance with precedent, that "even resolved questions of liability implicate whether a putative class shares a common nucleus of facts." *Id.* at 58. Here, all the proposed Class members are unified by Corpoelec's breach of the Indenture and the Notes' terms.

**C.    Plaintiff's claim is typical of the claims of other Class members.**

The Second Circuit Court of Appeals explained that typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) (internal citation omitted). As a Noteholder, Plaintiff "has claims typical of those of the Class by virtue of being subject to the same contractual terms." *See H.W. Urban GmbH v. Republic of Argentina*, 2003 U.S. Dist. LEXIS 23363, at *4 (S.D.N.Y. Dec. 30, 2003), *motion granted as to Argentina's liability to holders of the beneficial interests*, 2006 U.S. Dist. LEXIS 9668 (S.D.N.Y. Mar. 9, 2006). Every proposed Class member, including Plaintiff, owns beneficial interests in the Notes pursuant to the Indenture, and all have failed to receive principal

and interest payments.  Typicality exists even where damages amounts may differ among Class

members.  *See Seijas*, 606 F.3d at 58.

Further, membership in the proposed Class is fully ascertainable.  *See Brecher*, 805 F.3d

at 24 ("[l]ike our sister Circuits, we have recognized an implied requirement of ascertainability …

the touchstone of ascertainability is whether the class is sufficiently definite so that it is

administratively feasible for the court to determine whether a particular individual is a member"

(internal quotations omitted)).  According to the class definition, the Class will never enlarge

beyond Noteholders on April 9, 2024.  The Depository Trust and Clearing Corporation ("DTCC")

is the holder of the issuer's master Note.  The clearing system records of DTCC, DTCC's

Participants, and further brokers and other intermediaries provide highly reliable and definitive

information on investors' holdings of beneficial interests in the master Note on any given date.

*See* Wickersham Dec., ¶¶ 4-6.  Class members who dispose of their Notes after April 9, 2024, will

ascertainably not be included in the class because the DTCC clearing system will no longer identify

them as Noteholders after their dispositions.  *See Puricelli*, 797 F.3d at 215.  When Class

membership needs to be ascertained, *e.g.* for distributing class notice or determining eligibility for

a settlement or judgment, the clearing system provides the best practicable method – and is in fact

used daily for distributing interest and dividend payments, notices of corporate actions, and a

plethora of other transactions and notifications with respect to numerous worldwide debt and

equity securities. Many billions of dollars of securities are entrusted to this system, and there is no

tenable argument that the system does not work with complete accuracy for its intended purposes.

*See* Wickersham Dec. ¶¶ 5-8.

**D.    Plaintiff is an adequate representative with experienced class action counsel.**

Mr. Mazzaccone's Declaration describes his ownership of beneficial interests in the

Notes; his commitment to representing the interests of all proposed Class members; and his

desire to protect the rights of all Noteholders, especially those who so far have not actively protected their claims.  Mazzaccone Dec. ¶ 14.  He is well qualified to represent the proposed Class.

Duane Morris LLP will be adequate Class counsel.  The firm is experienced in handling sovereign debt cases and class actions, has successfully represented numerous plaintiffs in the Argentina bond litigation, and currently represents various holders in pending Republic and PDVSA bond and note default cases. Costantini Dec. ¶¶ 2-4.  The lawyers who referred Mr. Mazzaccone to Duane Morris LLP (Mr. Spencer, a New York lawyer, and Ms. Rosito Vago, an Argentine lawyer) remain closely involved in the prosecution of many of these cases and have extensive experience in sovereign bond and (in the case of Mr. Spencer) class action litigation.  Mazzaccone Dec. ¶ 7; Declaration of Michael C. Spencer ("Spencer Dec.") ¶¶ 3-7.  Based on all the factors identified in Rule 23(g), respectfully submitted, Duane Morris should be appointed Class Counsel.

**III.    This Action Meets the Requirements of Fed. R. Civ. P. 23(b)(3)**

    **A.    Common questions of fact and law predominate over individual issues.**

In this case, "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  As described above, all Noteholders share common breach of contract claims against Corpoelec for its failure to repay principal and pay interest on the bonds.  In *H.W. Urban*, 2003 U.S. Dist. Lexis 23363, at *6, the court held that common questions of law and fact concerning the subject bonds predominated, observing:

> The questions of law and fact upon which liability depends are common to all members of the class, since liability depends on contractual terms applicable to all bonds. Plaintiff, being a bondholder, has claims typical of those of the class by virtue of being subject to the same contractual terms . . . It is clear that the questions of law and fact common to the members of the class predominate over any

individual questions. As already described, all questions relating to liability are common. Questions as to the type of relief will also be common. The remaining individual issues about the quantum of relief can undoubtedly be resolved by the processing of claims, which need not be unduly complex.

*Id.* at *7-8 (emphasis in original).

The same considerations apply here. The Indenture and Note documents "create[] a unifying device, permitting the common issues to predominate over the individual issues." *See Dornberger*, 182 F.R.D. at 81. The Class is thereby unified through these common contract documents and terms.

**B.    A class action is the superior method for adjudicating Noteholders' recovery claims fairly and efficiently.**

**1.    General superiority of the class action**

The superiority of a class action in adjudicating sovereign debt disputes was articulated by the *H.W. Urban* court as follows:

As to the superiority of a class action to other procedures, the court notes the following. As indicated earlier, certain bondholders prefer to bring their own individual actions, and have done so. But for those who wish to be part of this proposed class action, it is reasonable for them to believe that it is superior to their bringing individual actions . . . For those who do not wish to be a part of the present class action, they will have an opportunity to make that choice.

*H.W. Urban,* 2003 U.S. Dist. Lexis 23363, at *7. The same considerations of class action superiority apply here.

Given the high cost of litigation, "especially [when] many of the plaintiffs are foreign nationals," numerous dispersed individual investors would not likely be able to arrange and afford to pursue individual actions to recover on their Notes. *See Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 158 (S.D.N.Y. 2002); *see also In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 172 (S.D.N.Y. 1997) (finding it "highly unlikely that individual plaintiffs would shoulder the burden and cost of this vast and complex litigation").

Further, "considerations of judicial economy and justice support the conclusion that all of the Class claims be asserted in a single forum," and doing so will streamline the litigation process. *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 57-58 (S.D.N.Y. 1993).

### 2. The pendency of this class action definitively tolls the running of limitation periods.

Finally, in the present case, class treatment is arguably essential for preserving the claims of Noteholders who had not filed individual actions at the time this case was brought (on the eve of the expiration of the six-year limitation period for claims to recover principal). Without this proposed class action, Noteholders' claims, except for holders who already filed individual cases (see below), would be at considerable risk of dismissal under the six-year statute of limitations.

As mentioned above, Corpoelec may argue that the National Assembly's 2023 Tolling Resolution makes limitations irrelevant. However, that position is based on several risky assumptions (for investors) regarding Venezuelan public law and New York limitations law. While the United States recognizes the National Assembly as the government of Venezuela and the National Assembly's resolutions as acts of state, the Venezuelan public and constitutional law of "legislative temporality" provides that future legislatures can always override or reverse prior enactments by the state. Fernandez Dec. ¶¶ 44-46. In addition, the Constitution of Venezuela vests exclusive authority in the President for matters involving public credit and external financial obligations, not the legislature. *Id.* ¶¶ 32-37. Under these circumstances, investors cannot safely rely on a unilateral resolution issued by an interim national government to definitively avoid a possible limitation defense, simply because that government has been recognized by the United States.

The Nicolás Maduro administration also issued a "Tolling Announcement," on March 30, 2023, purporting to toll and suspend all statutes of limitations on certain Venezuela-related bonded debt, including the Notes. Fernandez Dec. ¶ 12. There was a contemporaneous resolution recognizing the tolling adopted by a Corpoelec board of directors appointed by the Maduro administration. *Id.* ¶ 13. However, the United States government has not recognized the Maduro administration since January 2019, and U.S. Courts are constrained accordingly. The Maduro administration's Tolling Announcement was also procedurally deficient under the Venezuelan Civil Code and its legal efficacy is highly questionable under Venezuelan law. Fernandez Dec. ¶¶ 23-30.

It is telling that both the largest individual (non-class) lawsuits commenced so far involving enforcement of Venezuela sovereign bonds and quasi-sovereign bonds were devised deliberately to toll limitations for plaintiff Bondholders. *See Aurelius Capital Master Ltd. et al. v. The Bolivarian Republic of Venezuela*, Index No. 655071/2023 (N.Y. Sup. Ct., Oct. 11, 2023) (NYSCEF No. 1) ("*Aurelius v. Republic*"); *Aurelius Capital Master Ltd. et al. v. Petroleos de Venezuela, S.A.*, Index No. 655041/2023 (N.Y. Sup. Ct., Oct. 11, 2023) (NYSCEF No. 1) ("*Aurelius v. PDVSA*"). On October 11, 2023, over 100 investment funds allegedly holding over $4.1 billion in face amount of Venezuela sovereign notes and bonds and over $6.7 billion in face amount of Notes issued by PDVSA filed summons with notice in New York Supreme Court in each case. *Aurelius v. Republic*; *Aurelius v. PDVSA*. That filing procedure allowed the plaintiff funds to arrange with the Republic and PDVSA respectively to present to the Supreme Court a pre-negotiated stipulation and proposed order of discontinuance of the action without prejudice, which was filed on the same day, making clear that plaintiffs' main purpose was to establish tolling (and not to pursue immediate

adjudication or enforcement of their claims). *Aurelius v. Republic* (NYSCEF No. 13); *Aurelius v. PDVSA* (NYSCEF No. 14). In each respective case, the Republic and PDVSA stipulated with plaintiffs that it would not plead the statute of limitations in any action filed by such plaintiffs until the end of 2028. *Aurelius v. Republic*; *Aurelius v. PDVSA;* Costantini Dec., Ex. 3-4.

Accordingly, the well-lawyered institutional investor plaintiffs in the *Aurelius* cases felt it necessary, despite the National Assembly's Tolling Resolution, to file their actions prior to expiration of the six-year limitation period and to obtain and docket a bilateral stipulation, to be so-ordered, against any tolling defense. This is a powerful testament that the Tolling Resolution may not provide sufficient or definitive protection against the risk that Corpoelec will later assert limitation defenses in holder actions to enforce the Corpoelec notes.

The proposed Class members in the present action deserve the same protection as that obtained by the *Aurelius* plaintiffs. Similar legal protection arises from the pendency of this proposed class action and should be confirmed through the Court's certification of the proposed Class. *See China Agritech v. Michael H. Resh*, 584 U.S. 732, 739 (2018) ("*American Pipe* established that 'the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class'" (quoting *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974)).

### C.    Any purported issues relating to the Maduro government or to "tracing and proving ownership" of the subject bonds do not affect certifiability of the proposed class.

In a prior proposed S.D.N.Y. class action involving two other issuances of Venezuela sovereign bonds (*Mazzaccone v. Venezuela,* 24 cv 6168 (DLC), with the same counsel representing Mr. Mazzaccone and the Republic as in the present action), the Republic has opposed class certification by claiming that two "individualized" issues destroy commonality. Mr.

Mazzaccone's certification motion in that action has yet to be adjudicated.  If Corpoelec makes similar defense arguments here, they should be rejected.

*First,* the Republic has argued that proposed plaintiff classes of noteholders would include entities and individuals affiliated with, or controlled by, the Maduro regime, requiring an individualized threshold inquiry to ensure exclusion of such persons from the class.  The Republic did not cite any case or other authority for its position.  Moreover, such a purported "sanctions" issue would not become relevant unless and until class members become entitled, through these proceedings, to judgments or settlements.  Since the U.S. government will presumably continue to keep careful track of sanctioned persons and entities,[5] it would not be difficult to weed out any claims submitted in contravention of sanctions.  There is certainly no reason to reject certification of the proposed Class on that basis, at the start of the litigation.

*Second,* the Republic has asserted that there is no reliable, administratively feasible method for determining class membership, thus introducing an individual issue that destroys predominance. The Republic's argument is based on its mistaken idea that the "layered" or "waterfall" structure of securities holding system and records set up by the DTCC prevents ready identification of Class members.  As with the Republic bonds at issue in the prior case, DTCC is the holder of the Corpoelec master Note at issue here.

Any investor holding a beneficial interest in a Corpoelec note necessarily will have acquired, and will now hold, such interest through an account the holder maintains at a bank, broker, or other financial institution affiliated with the DTCC clearing system. Virtually every

---

[5]  *See* "Specially Designated Nationals List," Office of Foreign Assets Control ("OFAC"), https://sanctionslist.ofac.treas.gov/Home/SdnList (last updated Feb. 10, 2026).

public equity or debt security issued, held, and/or transacted electronically by investors is subject to the same process, constraints, and conditions. *See* Wickersham Dec., ¶ 4.

One key corollary is that an account statement issued by a broker or other system member is deemed to provide proof of ownership. After long experience wrestling with these issues in connection with summary judgment motions in the hundreds of Argentine bond default cases in the 2000s and 2010s, Judge Griesa held that bondholders could establish ownership of the Bonds simply by presenting their account statements, and without obtaining separate authorization certificates. *Mazzini v. Republic of Argentina,* No. 03 Civ. 8120, 2005 WL 743090 (S.D.N.Y. Mar. 31, 2005); *Olifant Fund, Ltd. v. Republic of Argentina,* No. 10 CV 9587 TPG, 2012 WL 1205079 (S.D.N.Y. Apr. 11, 2012). Money judgments enforcing many millions of dollars' worth of bonds have been entered by Judge Griesa and Judge Preska on the strength of such account statements. The same considerations apply to actions to enforce Venezuela-related securities. *See* Wickersham Dec. ¶¶ 2-9.

Accordingly, Plaintiff has demonstrated that a class action is a superior means of resolving the claims in this Action.

## IV.    Notice of a Certified Class Will Be Able to Be Efficiently and Reliably Disseminated to Class Members Through the DTCC Clearing System

The same DTCC clearing system processes described above with respect to identifying Class members also provide an efficient and reliable method for disseminating notice to the Class, assuming certification is granted.

As described in the Wickersham Declaration, DTCC routinely provides the means for distribution of notices to investors in connection with litigated claims, including class action notices of pendency. That is a reliable system for delivery of class action notices (including opt-out forms for investors who wish to exclude themselves from participation). No other method,

including media publication, can provide more targeted and robust notice to holders of these securities. Wickersham Dec. ¶¶ 8-10.

If the Court determines to grant class certification, Class Counsel will draft and provide a proposed notice of pendency for Court approval.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Mazzaccone respectfully requests that this Court grant his motion for class certification; appoint Mr. Mazzaccone as class representative; and appoint Duane Morris LLP as Class Counsel.

Dated: New York, New York
       February 12, 2026

 

Respectfully submitted,

DUANE MORRIS LLP

By:    */s/ Anthony J. Costantini*   
      Anthony J. Costantini
      Arti Fotedar
      Stephanie Lamerce
      Jillian Dreusike
      DUANE MORRIS, LLP
      22 Vanderbilt
      335 Madison Avenue
      23rd Floor
      New York, New York 10017
      Telephone: (212) 692-1032
      ajcostantini@duanemorris.com
      afotedar@duanemorris.com
      slamerce@duanemorris.com
      jdreusike@duanemorris.com

      *Attorneys for Plaintiff Massimo Mazzaccone*

16

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

I, Anthony J. Costantini, an attorney duly admitted to practice before this Court, hereby certify that this memorandum of law complies with the word count limit set forth in Local Rule 7.1(c) because it contains 4,752 words, excluding those items excluded by Local Rule 7.1(c). In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: February 12, 2026                          */s/ Anthony J. Costantini*
                                                  Anthony J. Costantini