**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MASSIMO MAZZACCONE, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

CORPORACIÓN ELÉCTRICA NACIONAL S.A.,

Defendant.

24-CV-2681 (JHR) (RWL)

Hon. Jennifer H. Rearden

**DEFENDANT CORPOELEC'S OBJECTIONS TO REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........ 1

II. STANDARD OF REVIEW ........ 2

III. ARGUMENT ........ 2

A. Mazzaccone Is Not Typical or Adequate As He Is Subject to a Substantial and Unique Champerty Defense ........ 2

B. The R&R Erred in Finding Common Questions Predominate over Individualized Issues Concerning Affirmative Defenses, Beneficial Ownership, Compliance, and Damages ........ 6

i. Champerty Defense ........ 6

ii. Beneficial Ownership ........ 7

iii. Compliance ........ 9

iv. Damages ........ 10

C. The R&R Erred in Finding Superiority ........ 10

IV. CONCLUSION ........ 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amla Litig.*,
282 F. Supp. 3d 751 (S.D.N.Y. 2017)....................8

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010)....................2

*Arpesella v. Venez.*,
No. 1:23-cv-08929 (S.D.N.Y. filed Oct. 11, 2023) ....................11

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018)....................7

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)....................3, 5

*Diverse Partners, LP v. AgriBank FCB*,
No. 16-cv-9526, 2019 WL 4305008 (S.D.N.Y. Sept. 11, 2019) ....................9

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990)....................2, 5

*Martinez v. Petróleos de Venez., S.A.*,
No. 1:23-cv-08923 (S.D.N.Y. filed Oct. 11, 2023) ....................11

*NML Capital, Ltd. v. Republic of Arg.*,
No. 12-105 (2d Cir. Jan. 10, 2013), Dkt. 780 ....................8

*Phx. Light SF Ltd. v. Bank of N.Y. Mellon*,
66 F.4th 365 (2d Cir. 2023) ....................6, 7

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
No. 14-cv-4394, 2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018) ....................8

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Assoc.*,
324 F. Supp. 3d 387 (S.D.N.Y. 2018)....................6

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
No. 14-cv-9764, 2018 WL 1831850 (S.D.N.Y. Apr. 17, 2018) ....................10

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)....................6

*Volino v. Progressive Cas. Ins. Co.*,
No. 21-cv-6243, 2023 WL 2532836 (S.D.N.Y. Mar. 16, 2023)....................8

*Wal-Mart Stores, Inc.* v. *Dukes*,
564 U.S. 338 (2011)....................6, 7, 9

*Zahn v. Venez.*,
No. 24-cv-9271, 2026 WL 2185589 (S.D.N.Y. July 29, 2026).................... *passim*

**Statutes**

28 U.S.C. § 636(b)....................2

N.Y. JUD. LAW § 489(1)....................4, 5

## I. PRELIMINARY STATEMENT

For years, the real authorities of Corpoelec were unable to participate in litigation against them to properly defend their interests and assets. Since 2019, the "National Assembly of 2015" purported to represent Corpoelec, including in this litigation. The United States' recognition of President Delcy Rodriguez's government on March 5, 2026, leaves no doubt that the representatives of Corpoelec's real authorities can now appear in this litigation.

Plaintiff Massimo Mazzaccone claims Corpoelec failed to pay principal and interest on $650 million of 8.5% Senior Notes that matured in April 2018.[1] He beneficially owns $133,000 in principal amount, and seeks to represent a class of all beneficial owners who held the Notes on April 9, 2024 and continue to do so.[2] The Report and Recommendation ("R&R")[3] recommends certifying the class and appointing Mazzaccone its representative.[4] Corpoelec objects for three principal reasons.

First, Mazzaccone is subject to a substantial, fact-intensive champerty defense that renders him atypical and inadequate. Judge Cronan denied class certification in another Venezuelan-bond action because a champerty defense threatened to preoccupy the proposed representative.[5] Here too, the record raises disputed fact questions concerning Mazzaccone's purpose in acquiring the Notes.[6]

Second, individualized issues predominate. Champerty defenses against absent members turn on the individual intent of the purchaser, which cannot be shown through common proof; determining who belongs in the class requires claimant-specific proof of beneficial and continuous

---

[1] Am. Compl. (Dkt. 18) ¶ 1.
[2] *Id.* ¶ 4.
[3] Dkt. 56.
[4] *Id.*
[5] *See Zahn v. Venez.*, No. 24-cv-9271, 2026 WL 2185589, at *8–16 (S.D.N.Y. July 29, 2026).
[6] *See* Def.'s Opp'n to Certify Class (Dkt. 49) ("Opp'n") at 15–16, 21–22.

ownership through the multilayered Euroclear/Clearstream system.[7] Coercive measures compliance will also require individualized inquiries; and damages must be determined member by member.[8]

Third, those same problems undermine superiority. Investors have repeatedly pursued comparable Venezuelan-debt claims individually as affirmative defenses, individualized ownership, compliance, and damages inquiries substantially diminish any efficiencies of class treatment.[9] The R&R's reliance on opt-out rights is misplaced where beneficial owners must be reached through layers of intermediaries, making actual notice uncertain.

Plaintiff has not satisfied Rules 23(a)(3), 23(a)(4), or 23(b)(3). The recommendation to certify the class should be rejected.

## II. STANDARD OF REVIEW

The R&R is reviewed *de novo*.[10]

## III. ARGUMENT

### A. Mazzaccone Is Not Typical or Adequate As He Is Subject to a Substantial and Unique Champerty Defense

Rule 23(a)(3) and (4) are not satisfied where the proposed representative is subject to a unique defense that threatens to become a focus of the litigation.[11] Judge Cronan applied this rule to materially similar circumstances in *Zahn v. Bolivarian Republic of Venezuela* and denied class certification.[12] *Zahn* explains that "[t]he relevant question . . . is not whether [the plaintiff's] purchase . . . in fact constituted champerty," but whether the "defense is sufficiently meritorious

[7] *See* Dkt. 37-2.
[8] Opp'n at 23–31.
[9] Decl. of Camilo Cardozo in Supp. of Opp'n (Dkt. 49-1) ("Cardozo Decl.") ¶ 18.
[10] *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010); 28 U.S.C. § 636(b)
[11] *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179–80 (2d Cir. 1990).
[12] *See* 2026 WL 2185589, at *6–8.

and 'threaten[s] to become the focus of the litigation' to the detriment of absent class members."[13] At class certification a defendant therefore "need not show . . . that the unique defense will prevail"; it is enough that the defense is not "groundless" or "far-fetched" and is substantial enough to require the particular representative to "devote considerable time to rebut" it.[14]

The R&R does not apply this rule correctly. Its analysis effectively required Corpoelec to establish the *merits* of champerty rather than determine whether the defense was sufficiently substantial and fact-intensive to preoccupy Mazzaccone.[15] Under *Zahn* and Second Circuit precedent, Corpoelec was *not* required to prove at certification that the defense actually applies.[16] Rather, the standard is simply *whether* the need for a fact-intensive inquiry into the plaintiff's purpose demonstrates the defense threatens to distract the representative from the claims of absent class members.[17]

Corpoelec easily made the required showing. Mazzaccone claimed he completed his purchases before the alleged default.[18] But the documentary evidence showed that he held only $45,000 of the Notes at Banca Sella in October 2017. After Corpoelec's alleged April 10, 2018 default, Mazzaccone owned $75,000 in Notes.[19] When asked whether he purchased the additional Notes after the default, Mazzaccone *could not recall*.[20] Nor could he recall whether he acquired another $58,000 tranche of the Notes after the alleged default.[21]

---

[13] *Id.* at *6 (quoting *Gary Plastic*, 903 F.2d at 180).
[14] *Id*. (alteration in original).
[15] R&R at 12–16.
[16] *See* 2026 WL 2185589, at *6; *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 58 (2d Cir. 2000).
[17] *See Zahn*, 2026 WL 2185589, at *6.
[18] Mazzaccone Decl. ¶¶ 3-6 (Dkt. 41)
[19] *Cf.* Cardozo Decl., Ex. 7 (Dkt. 49-8) (October 2017 face value), *with* Cardozo Decl. Ex. 8 (Dkt. 49-9) (April 30, 2018 face value).
[20] Cardozo Decl. Ex. 6 (Dkt. 49-7) at 71:15–73:3.
[21] *Id.* at 73:20–76:7.

The R&R itself acknowledges evidence suggesting that Mazzaccone's holdings increased after the alleged default.[22] Whether Mazzaccone in fact purchased Notes after the alleged default, and whether he in fact intended to litigate those Notes (as he is doing right now), is an unresolved fact issue that goes directly to the heart of Corpoelec's champerty defense.[23] That fact issue must be resolved at trial. Corpoelec is entitled to present evidence to the factfinder demonstrating that Mazzaccone is a financial and tax advisor and professional trustee who has participated in *six different actions* involving Venezuelan debt, including three putative class actions.[24] In one he admitted he acquired bonds "to strengthen the legal . . . position of all investors . . . ."[25] Whether those facts ultimately establish champerty is a merits question, but they plainly make the defense sufficiently substantial to require extensive litigation.

The R&R's reliance on *Elliott Associates, L.P. v. Republic of Peru* underscores the error.[26] The R&R recognizes that *Elliott* involved post-default purchases but emphasizes that the purchaser gave the debtor an opportunity to cure.[27] There is no comparable evidence here that Mazzaccone demanded payment, negotiated, sought settlement, or otherwise attempted to collect outside of litigation. As *Zahn* explained, efforts to recover without litigation are evidence that the purchaser acquired the instrument to collect it rather than to litigate it.[28] The R&R instead relies on Mazzaccone's delay in filing suit.[29] But whatever weight that delay may deserve by the factfinder, it cannot eliminate a core factual dispute at trial.

---

[22] R&R at 14 ("Mazzaccone may have increased his holdings in the wake of the Republic's" default).
[23] *See Zahn*, 2026 WL 2185589, at *6 (quoting *Phx. Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 372 (2d Cir. 2023)).
[24] Dkt. 41 ¶ 4; *see also* Dkt. 41-1 at 2; Cardozo Decl. Ex. 6 (Dkt. 49-7) at 11:10–20; Opp'n at 15 n.24.
[25] Mazzaccone Decl. ¶ 14, No. 24-cv-06168, Dkt. 34. Mazzaccone's sworn statements support the inference his acquisitions were litigation-driven. *See* N.Y. JUD. LAW § 489(1).
[26] 948 F. Supp. 1203 (S.D.N.Y. 1996).
[27] R&R at 14.
[28] 2026 WL 2185589, at *6 (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 139 (2d Cir. 2009)).
[29] R&R at 15.

Nor does *Mazzaccone v. Bolivarian Republic of Venezuela* ("*Mazzaccone I*") resolve the issue.[30] Judge Cote rejected champerty there because, although Mazzaccone had brought other Venezuelan-bond actions, the defendant did not argue, and the record did not establish, that he was "engaged directly or indirectly in the business of collecting claims"—an express statutory requirement.[31] But, Corpoelec made that very argument here.[32] *Zahn* also distinguished *Mazzaccone I* on this ground.[33]

Finally, the R&R places undue weight on an observation that champerty historically was "largely directed toward preventing attorneys from filing suit."[34] While New York's earliest champerty prohibitions targeted lawyers, "in 1907, the prohibitions were extended to non-lawyers and corporations."[35] The statutory text reaches any qualifying "person or co-partnership" engaged directly or indirectly in the collection and adjustment of claims.[36]

Precedent is clear: Corpoelec need not *prove* champerty *now*. It need only show a substantial, non-frivolous defense peculiar to Mazzaccone that is sufficiently meritorious to require considerable time to rebut, while potentially defeating his claim without affecting absent class members' claims.[37] *Zahn* confirms that standard.[38] Because Mazzaccone will necessarily have to litigate his acquisition history, his purpose in acquiring the Notes, and whether his professional and litigation activities bring him within § 489(1), his champerty defense threatens to become a central focus, destroying typicality and adequacy.[39]

---

[30] No. 24-cv-6168, 2026 WL 444752 (S.D.N.Y. Feb. 17, 2026).
[31] *Id.* at *3.
[32] Opp'n at 19–21.
[33] *Zahn*, 2026 WL 2185589, at *7.
[34] R&R at 13.
[35] *Bluebird Partners, L.P. v. First Fid. Bank*, N.A., 94 N.Y.2d 726, 734 (2000).
[36] N.Y. JUD. LAW § 489(1).
[37] *See, e.g.*, *Baffa*, 222 F.3d at 58.
[38] *See* 2026 WL 2185589, at *6–8.
[39] *Gary Plastic*, 903 F.2d at 180.

**B. The R&R Erred in Finding Common Questions Predominate over Individualized Issues Concerning Affirmative Defenses, Beneficial Ownership, Compliance, and Damages**

Rule 23(b)(3) requires Plaintiff to show that common questions are "more prevalent or important" than questions requiring member-specific proof.[40] Plaintiff's predominance argument rests on one common issue: whether Corpoelec is liable for breaching the Indenture.[41] Against that issue, the Court must weigh the totality of the individualized inquiries the litigation will require, including member-specific champerty defenses, beneficial ownership and continuous holding, compliance, and damages. The R&R minimizes those individualized issues and fails to give adequate weight to their cumulative significance.

i. <u>Champerty Defense</u>

The R&R correctly rejects Plaintiff's contention that champerty is unavailable against absent class members, but fails to acknowledge that Corpoelec is entitled to raise and litigate an individualized champerty defense *as to each class member*.[42] Champerty turns on the purchaser's intent at the time of acquisition,[43] and is inherently individualized, turning on when bonds were purchased, from whom, at what price, and with what knowledge of default and pending litigation.[44] These determinations cannot be resolved class-wide.[45]

Recent decisions confirm champerty is not just a hypothetical defense in Venezuelan debt litigation. Mazzaccone's apparent purchase of Notes after the alleged default, and his filing of *six different actions against Venezuela*, shows that Corpoelec has a meritorious champerty defense that it is entitled to raise against each putative class member. As discussed *supra* Section III.A,

---

[40] *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).
[41] Plaintiff's Mem. of Law in Supp. of Mot. to Certify Class (Dkt. 36) ("Mot.") at 14.
[42] R&R at 28–29; *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 367 (2011).
[43] R&R at 28 n.10.
[44] *See Phx. Light SF Lt*d., 66 F.4th at 372.
[45] *See Royal Park Invs. SA/NV v. U.S. Bank Nat'l Assoc.*, 324 F. Supp. 3d 387, 396–400 (S.D.N.Y. 2018).

*Zahn* held that champerty was "meritorious enough to require the plaintiff to devote considerable time to rebut" and denied class certification.[46] In *Syracuse Mountains Corp. v. Petróleos de Venezuela S.A.*, the court granted summary judgment on champerty grounds after determining the plaintiff's "primary purpose" was litigation rather than investment.[47] Entities like the *Syracuse* plaintiff—who acquired Venezuelan debt for the primary purpose of bringing litigation—may be class members. While the R&R waived off this concern as "speculation,"[48] Plaintiff cites no common proof that would rebut Corpoelec's champerty defense as to each individual class member. To the contrary, permitting a class to be certified here would violate Corpoelec's Due Process rights to litigate this individual defense before a factfinder.[49]

ii. Beneficial Ownership

The R&R discounts the individualized inquiries necessary to establish beneficial ownership. In *In re Petrobras Securities*, the Second Circuit held that questions of class-member eligibility must be analyzed as part of the predominance inquiry.[50]

Here, the Notes are not registered in the names of their beneficial owners. The Global Note is registered solely in the name of BNY Depositary, while beneficial interests are held electronically through Euroclear, Clearstream, their participants, custodians, nominee banks, and potentially other intermediaries.[51] Those intermediaries generally maintain records only of their own direct relationships and do not possess a centralized record identifying all ultimate beneficial

---

[46] *See supra* Section A; *Zahn*, 2026 WL 2185589, at *4.

[47] No. 21-cv-2684, 2024 WL 3637997, at *4–8 (S.D.N.Y. Aug. 1, 2024); *see also Phx. Light SF Ltd.*, 66 F.4th at 372.

[48] R&R at 29.

[49] *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (recognizing that proposed class adjudication must be protective of defendant's due process . . . rights); *Wal-Mart*, 564 U.S. at 367 ("[A] class cannot be certified on the premise that [defendant] will not be entitled to litigate its statutory defenses to individual claims.").

[50] 862 F.3d 250, 271-73 (2d Cir. 2017).

[51] *See* Dkt. 37-2 at 18–19.

owners.[52] Euroclear admitted to the Second Circuit in *NML Capital v. Argentina* that it cannot identify underlying investors who hold bonds through its system.[53] And the proposed class definition compounds the problem—it includes only persons who owned Notes on April 9, 2024 and "continue to hold thereafter."[54] Determining membership therefore requires claimant-specific evidence establishing not merely ownership on a particular date, but continued ownership thereafter.

The R&R does not dispute that individualized records are necessary. Instead, relying on Plaintiff's expert, it concludes that individual account statements provide sufficiently reliable proof of ownership.[55] But claimed availability of *individual statements*—which must be obtained on an *individual basis*—does not transform an individualized question into a common one. Plaintiffs cite no common proof that would establish beneficial ownership for the class as a whole.

The R&R cites *Amla* and *Volino*,[56] but those cases involved limited review of individualized records to determine class membership; they did not involve proving beneficial and continuous ownership of securities *for the entire class* held through multiple layers of intermediaries.[57] The *Royal Park* decisions do nothing more than contemplate certification only if the ownership inquiry ended with tracing the beneficial owner at a particular point in time;[58] here, each claimant must also establish that it *continued* to hold the Notes after April 9, 2024.

---

[52] *Id.*

[53] Euroclear Bank SA/NV Amicus Curiae Letter at 1-3, *NML Capital, Ltd. v. Republic of Arg.*, No. 12-105 (2d Cir. Jan. 10, 2013), Dkt. 780.

[54] Mot. at 5; Am. Compl. ¶¶ 4, 27.

[55] R&R at 25.

[56] R&R at 25–26.

[57] *In re Amla Litig.*, 282 F. Supp. 3d 751, 757 (S.D.N.Y. 2017) (defining class as individuals who purchased a product between two dates); *Volino v. Progressive Cas. Ins. Co.*, No. 21-cv-6243, 2023 WL 2532836, at *10 (S.D.N.Y. Mar. 16, 2023) (defining class as individuals who filed a first-party claim to the defendant insurance company).

[58] *See, e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394, 2018 WL 1750595, at *16 (S.D.N.Y. Apr. 11, 2018).

Plaintiff cites no way to conduct that uniquely complex inquiry through common proof, and there is none. Indeed, Corpoelec is entitled to *rebut* each putative class member's claim that they have continuously owned the Notes for over two years, which is precisely the kind of individualized inquiry that prevents class certification.[59] Likewise, Plaintiff's proposal to use account statements does not materially distinguish *Diverse Partners*; the proof remains claimant-specific.[60]

iii. Compliance

Without Corpoelec admitting the validity of the U.S. coercive measures, the R&R erred in concluding that coercive measures compliance that might be applicable to class members by virtue of applicable laws to them does not present a meaningful individualized issue.[61] While the R&R recognizes that each class member must establish the necessary compliance before entering a settlement or enforcing a judgment,[62] that inquiry is not comparable to routine claims-administration process envisioned by the R&R.[63]

While the R&R recognizes that such compliance may require "extensive data collection or complex tracing of ownership structure," it discounts that individualized inquiry stating that the Court would not perform it when deciding whether to grant a particular class member a license.[64] Whether a particular class member may obtain the relief sought still turns on facts unique to that member. And, reliance on *Mazzaccone I* does not resolve the issue. The fact that these individualized determinations may occur at settlement or enforcement rather than at the liability stage may affect their weight in the predominance analysis; it does not permit them to be

---

[59] *Wal-Mart Stores, Inc.*, 564 U.S. at 367.

[60] *See Diverse Partners, LP v. AgriBank FCB*, No. 16-cv-9526, 2019 WL 4305008, at *2–3 (S.D.N.Y. Sept. 11, 2019).

[61] R&R at 22–24.

[62] *Id.*

[63] *See id.* at 23–24.

[64] R&R at 24 n.9.

disregarded. They are one of several member-specific inquiries that, taken together, defeat predominance.

iv. Damages

Damages must be calculated on an individual basis. While damage calculations, standing alone, may not defeat predominance, they remain part of the overall predominance inquiry and must be considered together with the other individualized issues discussed *supra*.[65]

**C. The R&R Erred in Finding Superiority**

Mazzaccone must establish superiority, considering, among other things, class members' interests in controlling their own litigation, the extent of related litigation, and the likely difficulties in managing the class.[66] The R&R's superiority analysis, however, rests substantially on the same flawed premise as its predominance analysis—that the individualized issues can be relegated to routine claims administration[67]—and therefore fails for many of the same reasons.[68]

The record demonstrates that beneficial owners of Venezuelan debt—sophisticated institutions and modest holders alike—have pursued materially similar Venezuelan debt claims.[69] Corpoelec identified numerous individual actions involving Venezuelan sovereign and quasi-sovereign debt, including actions involving relatively modest holdings.[70] At least twelve individual suits on Venezuelan debt have been filed in this District—including three by

---

[65] *See Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, No. 14-cv-9764, 2018 WL 1831850, at *8 (S.D.N.Y. Apr. 17, 2018) ("[I]ndividualized damages inquiries remain a factor that a court may consider in undertaking the predominance analysis.").

[66] Fed. R. Civ. P. 23(b)(3).

[67] R&R at 31, 33–34.

[68] *See supra* Section B.

[69] Opp'n at 25–27; Decl. of Anthony J. Costantini in Supp. of Mot. For Class Cert. (Dkt. 37) Exs. 3–4 (Dkt. 37-3, 37-4).

[70] Opp'n at 25–27.

Mazzaccone himself—some involving claims of $10,000 or less.[71] Those actions involve different instruments and obligors, but they provide concrete evidence that bondholders at every level are both incentivized and capable of bringing individual suits.[72]

The R&R discounted those interests on the basis that investors preferring individual treatment might opt out.[73] But the availability of opt-out rights is not a practical solution, nor is it a valid reason to grant class certification, because it would be true in every case. Here, the ultimate beneficial owners are not identified in a centralized registry; they hold through layers of Euroclear, Clearstream, and downstream intermediaries.[74] And while Plaintiff contends that notice can be transmitted through that infrastructure,[75] the same decentralized holding structure that complicates proof of beneficial ownership necessarily complicates delivery of notice to the persons whose autonomy the opt-out mechanism supposedly protects.[76]

A class is not superior here given the required individual inquiries into champerty defenses, class membership, compliance, and damages.[77] On this record, Plaintiff has not carried his burden to show that such a structure is superior to individual actions.

---

[71] *See supra* Section A; Cardozo Decl. ¶ 18; *see, e.g.*, *Arpesella v. Venez.*, No. 1:23-cv-08929 (S.D.N.Y. filed Oct. 11, 2023), ECF 1*; Martinez v. Petróleos de Venez., S.A.*, No. 1:23-cv-08923 (S.D.N.Y. filed Oct. 11, 2023), ECF 1.

[72] *See* Opp'n at 26–27.

[73] R&R at 32–33.

[74] Opp'n at 9, 26–28.

[75] Reply (Dkt. 52) at 11–13; Mot. at 19–20.

[76] *See* Opp'n at 26–28.

[77] *See supra* Section B.

## IV. CONCLUSION

For the foregoing reasons, Corpoelec respectfully requests that the Court reject the R&R and deny Plaintiff's Motion for Class Certification.

Dated: New York, New York
September 30, 2026

Respectfully submitted,
HOGAN LOVELLS CADWALADER US LLP
/s/ *Phoebe A. Wilkinson*
Phoebe A. Wilkinson
Matthew Ducharme
200 Liberty Street
New York, New York 10281
Telephone: (212) 504-6000
phoebe.wilkinson@hlc.com
matthew.ducharme@hlc.com

*Counsel for Defendant Corporación Eléctrica Nacional S.A.*

## **LOCAL CIVIL RULE 7.1 CERTIFICATION**

I, Phoebe A. Wilkinson, an attorney duly admitted to practice before this Court, hereby certify that this memorandum of law in support of Defendant's Objections to the Report and Recommendation complies with the word limit set forth in Local Civil Rule 7.1(c), as it contains 3,274 words, excluding those items permitted for exclusion under this Local Rule. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: September 30, 2026
/s/ *Phoebe A. Wilkinson*
Phoebe A. Wilkinson

**CERTIFICATE OF SERVICE**

I certify that on September 30, 2026, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on Plaintiff's counsel of record, identified below:

Anthony J. Costantini
Arti Fotedar
Jillian Marie Dreusike
Stephanie Lamerce
DUANE MORRIS LLP
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone: (215) 979-1506
ajcostantini@duanemorris.com
afotedar@duanemorris.com
jdreusike@duanemorris.com
slamerce@duanemorris.com

/s/ *Phoebe A. Wilkinson*
Phoebe A. Wilkinson